681 F.2d 457
 111 L.R.R.M. (BNA) 2454, 94 Lab.Cas. P 13,611
 CLEVELAND PAPER HANDLERS AND SHEET STRAIGHTENERS UNION NO.
11 OF the INTERNATIONAL PRINTING AND GRAPHIC
COMMUNICATIONS UNION, Plaintiff-Appellee,
v.
E. W. SCRIPPS COMPANY, Publisher of the Cleveland Press and
the Plain Dealer Publishing Company, Defendants-Appellants.
 No. 80-3758.
 United States Court of Appeals,
Sixth Circuit.
 Argued April 19, 1982.
Decided June 18, 1982.
 
 Don H. Pace, Elliot S. Azoff, Baker & Hostetler, Cleveland, Ohio, for defendants-appellants.
 Stanley D. Gottsegen, Robert S. Stone, Burke, Haber & Berick, Cleveland, Ohio, for plaintiff-appellee.
 Before ENGEL and KENNEDY, Circuit Judges, and ENSLEN,* District Judge.
 PER CURIAM.
 
 
 1
 Appellants, The Plain Dealer Publishing Company and the E. W. Scripps Publishing Company, appeal the decision by the District Court for the Northern District of Ohio enforcing an arbitration award.
 
 
 2
 Appellee Cleveland Paper Handlers and Sheet Straighteners Union No. 11 of the International Printing and Graphic Communications Union (Union) is a party to separate collective bargaining agreements with appellants, newspaper publishers in Cleveland, Ohio. The appellants belong to the Cleveland Newspaper Publishers Association which acted as their joint negotiator and the two contracts are nearly identical. The contracts contain minimum manning provisions that specify the minimum number of members of the collective bargaining unit that must be employed if appellants' publishing plants are in operation. The contracts also contain manning schedules, which specify the number of bargaining unit employees required to perform each of several tasks. The contracts require that any dispute between the parties shall be submitted to final and binding arbitration. In addition, the Union's contract with The Plain Dealer contains a side letter stating that paperhandlers on the unloading crew not needed for unloading may be assigned to do any other paperhandler work. These provisions of the collective bargaining agreement have been the subject of several arbitrations and a pair of lawsuits.
 
 
 3
 The job classifications in the bargaining unit include "core unwinders," "balers," "platemen," "warehouse crew," etc. The manning schedule requires E. W. Scripps to man the baler with two members of the bargaining unit and to man the core unwinder with one. The Plain Dealer has consolidated the two operations, so is required to employ three members of the bargaining unit to perform both jobs together. In early 1977 Arbitrator Teple ruled that appellants had power under the bargaining agreement to transfer persons from one job classification to temporarily relieve persons in another classification.
 
 
 4
 The three baler and core unwinder employees at E. W. Scripps consistently finished their work well before the end of their shift, so the publisher consolidated its operations by eliminating two of the baler/core unwinder positions. Scripps thereafter assigned one person to do baling and core unwinding full time, supplemented as necessary by employees temporarily transferred from other positions within the bargaining unit. The Union objected and the case went to Arbitrator Ipavec.
 
 
 5
 Arbitrator Ipavec ruled that Scripps was not required to employ any persons to run the baler and core unwinder during shifts when those machines were not scheduled to be operated, but was required to use three bargaining unit employees to run them for each shift they were scheduled to operate, in accordance with the manning schedule. He did not specifically address the propriety of manning the baler and core unwinder with employees transferred from other classifications when the machines were scheduled to operate for only part of a shift, although this was a part of Scripps' manning policy. Arbitrator Ipavec also ruled that while the manning practices he addressed were proper, any layoff prior to his award was premature. He assessed damages for the premature layoff.
 
 
 6
 Scripps chose to construe this ruling together with the Teple ruling to mean that it could continue temporarily to transfer other bargaining unit employees to perform baler and core unwinder jobs without scheduling anyone full time for those tasks so long as the machines were not scheduled full time. The Union protested, claiming that under the collective bargaining agreement if the baler and core unwinder were scheduled to be run on even part of a shift then three employees had to be scheduled to run them. The dispute went back to Arbitrator Ipavec, who issued his decision on October 18, 1979. The Plain Dealer agreed to join this arbitration and be bound by its results.
 
 
 7
 One stipulated issue was presented to Arbitrator Ipavec: "Must the Publisher hire men solely for the operation of the baler and core machines or can the Publisher re-assign men previously assigned to other duties to the operation of the baler and core machines?" The arbitrator found that a simple yes or no answer could not be given to this question. He observed that since his and Arbitrator Teple's earlier decisions the collective bargaining agreement had been renegotiated, and neither the operative language of the agreement nor the terms of the arbitration awards had been changed. Thus, he concluded, those awards were now a part of the collective bargaining agreement itself, no longer subject to modification by another arbitrator. Because of the Teple award appellant had some rights to transfer employees assigned to one machine, so it clearly could not be forced to hire workers solely for the baler and core unwinder. Arbitrator Ipavec then ruled that the bargaining agreement required appellants to schedule the number of employees specified in the manning schedule for each operation that was to be functional on a shift. Thus, if appellants wished to schedule the baler and core unwinder they had also to schedule three bargaining unit employees to run those machines, although once scheduled those employees could be temporarily transferred, as necessary. Arbitrator Ipavec noted that as the case had been tried on a stipulated issue in which the question of damages was not raised, he did not have enough information to compute the damages for appellants' improper manning procedures. He directed the parties to conduct further negotiations on the question of damages.
 
 
 8
 Appellants continued to take the position after this second Ipavec decision that they were only required to hire employees specifically for the core unwinder and baler machines if the machines were scheduled to run for a full shift, and continued to man the machines as they had prior to the arbitrator's decision, transferring other full-time unit employees to operate the machines on a part-time basis as needed. The Union continued to argue that if the machines were scheduled for even a partial shift the arbitrator's award required that three employees be scheduled for those operations for that shift. The parties apparently agreed at one time to ask Arbitrator Ipavec for further clarification, and he agreed to provide it. However, before the parties could reach agreement on the question to be submitted to the arbitrator the Union broke off further discussions and initiated this lawsuit under section 301 of the Labor Management Relations Act, 29 U.S.C. § 185, for confirmation of Arbitrator Ipavec's second award and for damages.
 
 
 9
 Appellants moved to dismiss the complaint or to remand to the arbitrator for further clarification. The Union moved for summary judgment. On October 24, 1980 the District Judge denied appellants' motion to dismiss and granted appellee's motion for summary judgment. The judge concluded that there was no ambiguity in the arbitrator's award and granted enforcement. The court also ordered the parties to compute damages.
 
 
 10
 Appellants raise three issues: Whether the District Court exceeded its authority by (1) construing an ambiguous arbitration decision; (2) interpreting the Plain Dealer's contractual right to use its unloading crew for any paperhandling work not to permit the use of unloading crew in place of persons specifically scheduled for the baler and core unwinder under the Ipavec decision; and (3) ordering the parties to compute damages according to a specific formula.
 
 
 11
 The law is clear that federal courts have jurisdiction to enforce arbitration awards. United Steelworkers of America v. Enterprise Wheel & Car Corp., 363 U.S. 593, 80 S.Ct. 1358, 4 L.Ed.2d 1424 (1960). It is also clear that the courts may not go beyond the arbitration award to decide questions that the arbitrator did not decide. Id. at 599, 80 S.Ct. at 1362. An ambiguous award may not be enforced but should be remanded to the arbitrator. Id. at 597-598, 80 S.Ct. at 1361. An ambiguity in the opinion accompanying the award will not alone provide a reason to deny enforcement. Id. at 598, 80 S.Ct. at 1361. If the arbitrator's opinion and award, read together, are not ambiguous the award should be enforced. International Brotherhood of Electrical Workers, Local 369 v. Olin Corp., 471 F.2d 468 (6th Cir. 1972).
 
 
 12
 The District Court correctly held that the second Ipavec arbitration award was not ambiguous. Appellants argue that the award is ambiguous if it can be read to require appellants to hire bargaining unit employees to man the baler and core unwinder when those operations are not scheduled. The arbitrator's opinion specifically states that appellants are required to hire men to operate the baler and core unwinder "on any shift that the employer contemplates making such operations functional." The ambiguity appellants fear does not exist.
 
 
 13
 Appellants suggest that the first Ipavec award permits them to use other available paperhandlers to operate the baler and core unwinder, and the second award contradicts this if its requires them to hire people for the baler and core unwinder whenever those machines are scheduled. Appellants are incorrect about the holding of the first Ipavec decision, which did no more than say they were not required to employ persons to run the baler and core unwinder when those machines were not scheduled. It did not say appellants could transfer other workers to run those machines part-time in lieu of scheduling workers to run them. Although appellants apparently engaged in this practice prior to the first Ipavec award and the award does approve some of appellants' manning practices, the award does not specifically mention this practice and deals only with the separate question whether appellants must schedule baler and core unwinder employees on all shifts, regardless of whether or not machines are to be run on a given shift.
 
 
 14
 Appellants note that the second award requires them to hire employees for any shift in which the baler and core unwinder are scheduled to be run. They claim this is ambiguous because it could mean either when the machines are scheduled to be run for a full shift, or when they are scheduled to be run at all. Appellants are attempting to create an ambiguity where none exists. The fact that the award does not specify that the machines must be scheduled for a full shift means that this is not a necessary condition to the requirement that employees be scheduled.
 
 
 15
 In the process of reaching its conclusion that the second award is not ambiguous the District Court stated that the side letter in the Plain Dealer contract did not create an ambiguity, but just meant that other unloading crew members could relieve on the baler and core unwinder should workers scheduled on those machines be transferred. Arbitrator Ipavec did not construe this side agreement and the District Court did not need to. The side letter could not make the arbitrator's award ambiguous, no matter how construed. The District Court exceeded its authority by going beyond the arbitrator's award to interpret it.
 
 
 16
 Arbitrator Ipavec directed the parties to "negotiate a monetary settlement which will properly compensate the bargaining unit and the affected employees for the loss of situations." The District Court directed the parties to "compute the damages in the amount it would have cost (appellants) to man the baler and core unwinding machines with members of the bargaining unit employed for such jobs had (appellants) not changed their manning practices, from the date of the changes to the date of confirmation by this court." The District Court again exceeded its authority by departing from the arbitrator's general language to pick the date from which damages must be measured and to measure damages according to what it would have cost appellants to man the baler and core unwinder properly.
 
 
 17
 Those parts of the judgment construing the Plain Dealer side agreement and specifying a measure of damages are vacated. That portion of the District Court's order of October 24, 1980 directing "E. W. Scripps Company Publisher of the Cleveland Press and the Plain Dealer Publishing Company, ... to begin hiring immediately, members of the bargaining unit specifically for the tasks of manning the baler and core unwinding machines whenever such machines are to be functional" is affirmed. Each party will bear its own costs.
 
 
 
 *
 The Honorable Richard A. Enslen, Judge, U. S. District Court for the Western District of Michigan, sitting by designation