Kayle FOSTER, Appellant,

v.

CITY OF FAIRBANKS, Appellee.

No. S–6933.

Supreme Court of Alaska.

Dec. 27, 1996.

Brett M. Wood, Fairbanks, for Appellant.

John M. Eberhart, Deputy City Attorney, and Herbert P. Kuss, City Attorney, Fairbanks, for Appellee.

Before COMPTON, C.J., and RABINOWITZ, MATTHEWS, EASTAUGH, and FABE, JJ.

## OPINION

FABE, Justice.

## I. INTRODUCTION

Kayle Foster challenged the City of Fairbanks' interpretation of an arbitration award. She appeals from the superior court's order of summary judgment against her, claiming that the court should have remanded or vacated the arbitrator's award because it was ambiguous or grossly erroneous. We affirm the superior court's decision.

## II. FACTS AND PROCEEDINGS

On November 27, 1989, the City of Fairbanks (the City) notified Kayle Foster that it intended to lay her off on January 1, 1990. Foster had worked as a fire inspector for the City's fire department since 1981. She earned approximately $61,700 per year plus benefits.

On January 1, 1990, the City laid off its seven least senior fire department employees, consisting of three fire fighters, a paramedic, a secretary, a clerk, and Foster. The City characterized the layoffs as motivated by fiscal pressure.

The Fairbanks Fire Fighters Association (the Association) challenged the layoffs in a grievance filed on January 10, 1990. The Association demanded "the immediate return of these individuals to their positions ... as well as compensation for the periods they have been off work." The Association characterized the seven layoffs as discrimination against the employees for their union membership and as a ploy to avoid implementing a pay raise scheduled to take effect in 1990.

Foster took a new job in Juneau soon after the layoff in January 1990. In April 1990 the City recalled four of the seven laid-off employees, including the three fire fighters and the paramedic. The clerk and the secretary retired, although the clerk claimed she was forced to retire. Subsequently, the fire department deleted the positions formerly held by the clerk and Foster. The Association did not object to the deletions. On April 12, 1990, the City (through the Association) offered the secretary's former job to Foster. This position paid $25,000 less than Foster's former position as a fire inspector. Foster could not accept such a pay cut. She rejected the offer and remained in Juneau.

In 1993 the Association's January 1990 grievance reached arbitration under the labor agreement between the Association and the City. The Association stated in its prehearing memorandum that "[t]he seven affected employees were offered their jobs back on April 10, 1993 [sic].[1] However, only four of the seven accepted." Although the original grievance had demanded reinstatement of the employees, the prehearing memorandum requested only "compensation for the period of work off."

The arbitrator, William Erwin, found that the City's fiscal explanation for the layoffs was pretextual, that the City laid off its employees as a negotiating ploy, and, therefore, that the City had violated the collective bargaining agreement. Based on the Association's representations in its prehearing memorandum, the arbitrator found that in April 1990 all seven employees had been "called to return to work" and that four had returned, but the other three "had found other jobs and declined to return to City employment." Therefore, he ordered the City to pay the seven laid-off employees back salary and benefits from January 1, 1990 "to the day all were recalled."[2]

---

1. The four fire fighters were recalled in April 1990, not 1993.

2. Due to the Association's assertion that Foster was recalled to her former job, the arbitrator apparently believed that all seven employees were recalled on April 10, 1990. Therefore, the intent of his order was to reimburse all seven

The City interpreted the arbitrator's award as meaning that it owed Foster approximately $38,000 as compensation for the period from January 1, 1990 to April 1990, when the City offered her a secretarial position. Foster disagrees. Because she was offered only a secretarial position, she interpreted the award as entitling her to an offer to return to her old position as a fire inspector,[3] and to full pay between January 1, 1990 and the future date when the City makes that offer.

Foster accepted $38,005.85 from the City, under the mutual understanding that she disputed whether the sum served as complete satisfaction of her claim. She brought suit in the superior court, seeking declaratory judgment implementing one of two remedies: (1) restoration to her former position with compensation for lost wages during the interval or (2) remand to the arbitrator for clarification because his decision was ambiguous or incomplete.

The parties stipulated that the case could be resolved by cross-motions for summary judgment. In its decision, the superior court cited extensive authority outlining Alaska's policy of deference toward arbitration results. The court presumed "that the parties presented the best case at the time of arbitration" and found that the Association had asked only for back pay and benefits, not for Foster's reinstatement. Finding that the arbitrator's award was neither ambiguous, as its "true intent" was apparent, nor grossly erroneous, the court entered summary judgment in favor of the City. Foster appeals.

## III. *DISCUSSION*[4]

Foster makes only one legal argument on appeal: that the award was ambiguous and should be remanded for clarification. In her statement of facts, Foster also asserts in

passing that the arbitrator "committed a gross error." We consider both claims.

### A. *The Award Was Not Ambiguous.*

Foster contends that the award was ambiguous because it can reasonably support two interpretations: hers and the City's. In response, the City argues that the award unambiguously gave Foster back pay for the period between January and April 1990.

Alaska law accords great deference to arbitrators' findings. *Ahtna, Inc. v. Ebasco Constructors, Inc.*, 894 P.2d 657, 660 (Alaska 1995). However courts may, and should, remand to an arbitrator where the award is "patently ambiguous." *International Bhd. of Elec. Workers, Local Union 1547 v. City of Ketchikan*, 805 P.2d 340, 344 (Alaska 1991). Alaska heeds the common law that federal courts have developed on remanding arbitrators' awards for ambiguity. *Id.* at 343–44.

The reason for the practice of remanding is that "[a]n ambiguous award should be remanded to the arbitrators so that the court will know exactly what it is being asked to enforce." *Americas Ins. Co. v. Seagull Compania Naviera, S.A.*, 774 F.2d 64, 67 (2d Cir.1985) (citing *Cleveland Paper Handlers & Sheet Straighteners Union No. 11 v. E.W. Scripps Co.*, 681 F.2d 457, 460 (6th Cir.1982) (per curiam) and *Oil, Chemical & Atomic Workers Int'l Union, Local 4–367 v. Rohm & Haas, Texas, Inc.*, 677 F.2d 492, 495 (5th Cir.1982) (per curiam)). When possible, however, courts should avoid remanding on the basis of ambiguity "because of the interest in prompt and final arbitration." *Teamsters Local No. 579 v. B & M Transit, Inc.*, 882 F.2d 274, 278 (7th Cir.1989).

Foster's argument that ambiguity means "subject to two reasonably different interpretations" is incorrect for two reasons.

employees for the approximately four-month period during which they were laid off.

**3.** Foster says that today she would no longer accept her old job back. Nevertheless, she insists that the City should offer it to her.

**4.** "When reviewing a grant of summary judgment, this court 'must determine whether there

was a genuine issue of material fact and whether the moving party was entitled to judgment on the law applicable to the established facts.' All reasonable inferences of fact from proffered materials must be drawn against . . . the moving party, and in favor of . . . the non-moving party." *Zeman v. Lufthansa German Airlines*, 699 P.2d 1274, 1280 (Alaska 1985) (citation omitted).

First, that definition is derived from the law of contracts, not arbitration. Second, that definition is the standard for ambiguity rather than "patent" ambiguity, which was the focus of our analysis in *International Brotherhood of Electrical Workers*, 805 P.2d at 344. Because of the policy of respect for arbitrators' awards, courts should find ambiguity in an arbitrator's award less readily than in a contract. Patent ambiguity does not exist where the arbitrator's "true intent" is apparent. *Id.* A court may rely on the context created by the record to resolve a potential ambiguity. *Teamsters Local No. 579*, 882 F.2d at 278.

In an illustrative case, an arbitrator ordered a hotel to "reinstate" fired housekeepers "to their former employment." *United Steelworkers of America, Dist. 36, Local 8249 v. Adbill Management Corp.*, 754 F.2d 138, 140 (3d Cir.1985). The hotel restored the housekeepers to the payroll but immediately placed them on "indefinite layoffs" because of the hotel's low occupancy. *Id.* A trial court remanded the case to the arbitrator to determine whether the hotel's action complied with the order. *Id.* The U.S. Court of Appeals for the Third Circuit reversed, holding that the award was unambiguous because "reinstate[ ] . . . to their former employment" indicated the arbitrator's intent to require the hotel to return the housekeepers to active duty. *Id.* at 141–42.

Similarly, in *Zephyros Maritime Agencies, Inc. v. Mexicana De Cobre, S.A.*, 662 F.Supp. 892 (S.D.N.Y.1987), a court determined an arbitral award to be unambiguous where the award stated that "interest shall resume" in thirty days if one party did not make payment. *Id.* at 894. The court found that the word "resume" indicated the arbitrator's intent to suspend interest during the thirty-day period. *Id.* at 894–95.

■ In light of this authority, we conclude that in this case the arbitrator's findings and award were unambiguous. The order that the City must pay salaries and benefits "to the day all were recalled" is clear in the context of the arbitrator's factual findings that all seven employees were recalled to their jobs in April 1990 and that three employees declined to take the offered recall. The arbitrator's clear intent was to award Foster back pay for the period from January to April 1990. Neither the possibility of an unintended alternative interpretation of the award nor the fact that the arbitrator believed that the Association had recalled Foster to her former position renders the award patently ambiguous.

B. *Foster Is Estopped from Successfully Challenging the Award Based on the Arbitrator's Erroneous Belief that She Had Been Recalled.*

■ Foster alleges in passing that the arbitrator's decision was erroneous because it was based "without any evidentiary support" on the false premise that Foster was recalled to her former position. However, we conclude that Foster is estopped from challenging the award based upon the arbitrator's incorrect factual determination because neither Foster nor the Association offered evidence during the arbitration that reasonably could have caused the arbitrator to find otherwise. Indeed, the Association actively encouraged the arbitrator to believe that Foster had been recalled.[5] For example, the Association informed the arbitrator in its prehearing memorandum that Foster was offered her job back. Foster did not testify at the arbitration hearing, so she did not correct this mistake. In fact, her attorney, who signed the Association's prehearing memorandum to the arbitrator stating that Foster was recalled, concedes that he never corrected the mistake: "the arbitrator did not hear evidence that . . . [Foster] . . . was never offered a recall to her prior position."

The calculations of the total award presented to the arbitrator by Foster's attorney provide further evidence that the Association took the position in arbitration that Foster

---

5. We have also recognized that a party may not successfully appeal an error if that party invited the error. *Aviation Assocs., Ltd. v. TEMSCO Helicopters, Inc.*, 881 P.2d 1127, 1131–32 (Alaska 1994); *Geolar, Inc. v. Gilbert/Commonwealth, Inc.*, 874 P.2d 937, 948 (Alaska 1994) (finding that a party could not claim that certain evidence had prejudiced the jury where that party not only failed to object to the evidence at trial but also initially brought the evidence to the attention of the jury).

had been recalled. Before arbitration, the Association demanded approximately $294,000: $220,000 in principal (back pay for all seven employees) plus $74,000 in interest, which accrued "from the time the affected employees either returned to work or were eligible to return to work." After the arbitrator's decision, the Association calculated the award as the same amount: approximately $294,000, consisting of $220,000 in principal plus approximately $74,000 in interest "accruing at the rate of $63.28 per day since May 1, 1990, ... as of July 1, 1993." These statements indicate that during and immediately after the arbitration, the Association failed to demand continuing back wages for Foster; according to the Association's calculation, the City's only continuing obligation after April or May 1990 was interest. Only in August 1993, nearly one month after the decision, did the Association say that "upon further consideration" the figure "should be adjusted substantially upward" because Foster was never recalled.

## IV.  *CONCLUSION*

We AFFIRM the superior court's decision. We conclude that the superior court correctly determined that it should not remand the arbitrator's award for ambiguity. Furthermore, because Foster and the Association actively encouraged the arbitrator to believe that she had been recalled, she is estopped from appealing that error.