Joseph M. HART, Cheryl Lynn Hart,
and Vinewood Communications *v.*
Norman D. McCHRISTIAN

00-1269 42 S.W.3d 552

Supreme Court of Arkansas
Opinion delivered May 10, 2001
[Petition for rehearing denied June 14, 2001.]

*Harrington, Miller, Neihouse & Krug, P.A.*, by: *Wayne Krug*, for appellants.

*John R. Eldridge, III*, for appellee.

W.H. "DUB" ARNOLD, Chief Justice. Appellants, Joseph M. Hart and Cheryl Lynn Hart, bring the instant appeal challenging the Washington County Chancery Court's decisions ordering them to submit to arbitration, confirming the arbitrators' award, holding them in contempt, and directing them to pay the full costs of arbitration and appellee Norman D. McChristian's attorney's fees. Appellants initially appealed the decisions to the Arkansas Court of Appeals. In an opinion dated April 26, 2000, the appellate court declined to vacate the arbitrators' award but reversed and remanded the case for further development and clarification on the issue of whether appellee had standing to seek arbitration. The Court of Appeals also modified the trial court's contempt order. *See Hart v. McChristian,* 71 Ark. App. 178, 36 S.W.3d 357 (2000).

Pursuant to Ark. R. Sup. Ct. 1-2(e) and 2-4 (2000), we granted appellants' petition for review. When we grant a petition to review a case decided by the appellate court, we review it as if it was filed originally in this court. *See Williams v. State,* 328 Ark. 487, 944 S.W.2d 822 (1997) (citing *Allen v. State,* 326 Ark. 541, 932 S.W.2d

764 (1996)). After considering the parties' arguments, we affirm the trial court in all respects.

*Background*

On January 27, 1990, the Harts, McChristian, and D.D.&B., Inc., formed a limited liability partnership called Vinewood Communications for the purpose of licensing, constructing, owning, operating, maintaining, and managing a Class A F.M. radio station. The Harts were designated as the general partners and owned ten percent of the partnership units. McChristian and DD&B became limited partners, owning eighteen percent and seventy-two percent of the partnership units, respectively. The partnership agreement gave the Harts, as the general partners, exclusive discretion in the business's management and control.

However, the agreement also provided a mechanism for removal of the general partners. Following a removal proposal raised by limited partners holding fifty percent of the units, removal could be accomplished by agreement of limited partners holding seventy-five percent of the partnership units. Then, if the general partners objected to removal, the agreement provided that "the matter shall be submitted within thirty (30) days of such notice of objection by all parties to binding arbitration which shall conform to the rules of the American Arbitration Association, as far as appropriate." Moreover, the agreement indicated that the decision of the arbitrator shall be "final and binding upon the parties in a court of competent jurisdiction."

On July 16, 1998, McChristian notified the Harts of a sale and assignment of DD&B's limited-partnership interest to McChristian, resulting in his being the sole limited partner. The notice also informed the Harts that McChristian consented and agreed to the Harts removal as general partners. A separate notice dated July 13, 1998, explained to the Harts that an August 17, 1998 meeting was scheduled to vote upon the Harts removal as general partners based upon allegations of improper conduct, including breach of fiduciary duty, negligence, fraud, willful misconduct, mismanagement and misappropriation of assets, and violation of FCC rules and regulations. Appellee maintains that the Harts were removed as general partners, per the limited-partnership agreement, at the August 17, 1998 meeting.

Appellee then filed a complaint in the Washington County Chancery Court on August 28, 1998, alleging that the Harts had breached the limited-partnership agreement by mismanaging Vinewood Communications, misappropriating assets, and operating the company for their personal benefit. McChristian also sought an accounting, the appointment of a receiver, and an order requiring the parties to submit to arbitration should the Harts object to removal. In response, appellants argued that arbitration was unwarranted because McChristian held only eighteen percent of the partnership units at the time of the vote and, thus, lacked the authority to remove them as general partners. Following a February 2, 1999 hearing, the chancellor rejected appellants' arguments and ordered the parties to submit to arbitration. Additionally, the court determined that appellants should raise to the arbitration panel the issue of McChristian's standing to remove general partners.

The arbitration hearing commenced on May 10, 1999. At its conclusion, the arbitrators found that the removal of the general partners was appropriate. On June 28, 1999, the chancellor confirmed the arbitration award, appointed a receiver per appellee's request, and restrained the Harts from interfering with Vinewood Communications or its assets. Pursuant to this order, the receiver was directed to take possession of all partnership assets and to file an application with the Federal Communications Commission to transfer control of Vinewood Communications to a successor general partner.

The Harts subsequently filed motions to amend or vacate the arbitrators' award and the trial court's June 28, 1999 order confirming the award. Appellants also reiterated their argument that McChristian lacked standing to effect their removal. Further, they claimed that the arbitrators violated several procedural rules by (1) denying their request for a continuance, (2) failing to ensure the timely exchange of exhibits, and (3) excluding their representative, Cheryl Hart, from a post-arbitration conference. After considering appellants' motion, the chancellor declined to modify or vacate the arbitrators' award but entered a judgment confirming the award pursuant to Ark. Code Ann. section 16-108-214 (1987).

Appellants then filed an objection with the FCC to the transfer of Vinewood Communications to the receiver. As a result, McChristian filed a motion asking the Harts to be held in contempt for violating the court's June 28, 1999 order prohibiting their interference with the partnership or its assets. The trial court agreed and held the Harts in contempt for interfering with the receiver by

filing opposition with the FCC. On September 20, 1999, the chancellor ordered appellants to withdraw their objection with the FCC and to pay, as punishment for contempt, $7,118.90, representing the full cost of the arbitration, plus other costs incurred as a result of their contempt, and appellee's attorney's fees "as subsequently determined." From these orders, the instant appeal ensued.

## I. Arbitration

Appellants' first point on appeal challenges the chancellor's initial February 2, 1999 order granting McChristian's motion to compel arbitration pursuant to the terms of the limited-partnership agreement. Essentially, appellants maintain that the chancery court should have determined whether appellee had standing to remove the general partners, as a threshold issue, prior to referring to arbitration the secondary issue of whether removal was appropriate. McChristian responds by pointing out that Arkansas' public policy strongly favors arbitration and considers it a less expensive and more expeditious means of settling litigation. Moreover, the scope of arbitration is defined by the parties' contractual agreements. Here, appellee asserts that the trial court correctly interpreted the parties' limited-partnership agreement to compel arbitration. We agree.

This court has oft recognized that as a matter of public policy, arbitration is "strongly favored." *Anthony v. Kaplan*, 324 Ark. 52, 918 S.W.2d 174 (1996) (citing *Lancaster v. West*, 319 Ark. 293, 891 S.W.2d 357 (1995); *Estate of Sandefur v. Greenway*, 898 S.W.2d 667 (Mo. App. W.D. 1995)). Arbitration is looked upon with approval by courts as a less expensive and more expeditious means of settling litigation and relieving docket congestion. *Id.* Significantly, we have also held that arbitration is a matter of contract between parties. *See May Constr. Co. v. Benton Sch. Dist. No. 8*, 320 Ark. 147, 895 S.W.2d 521 (1995). In fact, the same rules of construction and interpretation apply to arbitration clauses as apply to agreements generally. The construction and legal effect of a written contract to arbitrate are to be determined by the court as a matter of law. *Id.*, 320 Ark. at 149-50, 895 S.W.2d at 523.

Accordingly, this court will give effect to the parties' intent as evidenced by the arbitration agreement itself. In light of the policy favoring arbitration, such agreements will not be construed strictly but will be read to include subjects within the spirit of the parties' agreement. In other words, any doubts and ambiguities of coverage will be resolved in favor of arbitration. *See May Constr.*

*Co.*, 320 Ark. at 149, 895 S.W.2d at 523 (quoting *Wessell Bros. Foundation Drilling Co. v. Crossett Publ. School Dist., No. 52*, 287 Ark. 415, 701 S.W.2d 99 (1985) (internal citations omitted)).

Here, the parties agreed that should the general partner object to removal, the matter "shall be submitted . . . to binding arbitration." Then, the arbitrators shall render "a decision as to whether or not the removal of the General Partner was appropriate under the circumstances." Appellants counter that they never articulated an objection to removal but only an objection to appellee's standing to remove them. As a corollary to this argument, appellants insist that the standing issue was never resolved because the trial court instructed them to raise the matter in arbitration, but the arbitrators declined to reach the issue and failed to make a written finding on this point.

However, the transcript of the arbitration hearing demonstrates that the issue raised by appellants, whether McChristian had sufficient ownership of the partnership to remove them as general partners, was considered by the arbitrators. Appellants' abstract creates the false impression that the arbitrators repeatedly ignored their requests to consider the issue now raised on appeal. The record, however, reveals not only that the issue was raised but that appellants were given the opportunity to present evidence on the issue. The Harts failed to introduce any evidence disputing McChristian's claim that he validly held a seventy-two-percent interest in the partnership. Further, they proffered no evidence to contradict McChristian's claims nor disputed the validity of his exhibits. More importantly, the record reveals that the neutral arbitrator, Peter Bradford, understood that the resolution of this issue was part of the panel's ultimate determination of whether appellants were properly removed as general partners.

Particularly, the transcript of the arbitration hearing reflects the following discussion between appellant Joe Hart and the three arbitrators, Bradford, appellant Cheryl Hart, and William Bell, concerning the issue of the sufficiency of McChristian's partnership ownership:

> MR. BRADFORD: ... So these questions in this matter, Mr. Hart, Mrs. Hart, relate to — And you're free to look at these — the provisions of the partnership agreement which trigger or cause us to have this arbitration, because they say that if the proper notice was given and a meeting was held and there [was] a vote by 75 percent of the limited partners and you object to that, then we end

up with an arbitration after each side has appointed their party-appointed arbitrator and someone has been selected as a neutral. And that's the position I hold.

So that is the purpose of the hearing we're going to have today, as I understand these documents.

MR. HART: And what is the proof that Mr. McChristian has 70 — what, 90 percent?

MR. BRADFORD: He's going to present evidence about that when we get to that.

....

MR. BELL: Well, I'm even wondering, I guess, is it within our purview to decide the ownership issue? I mean, what we have here is a limited partnership agreement that provides a basis for arbitration.

MR. BRADFORD: Uh-huh.

MR. BELL: And then we have a court Order that says, "You will arbitrate." Is the point of ownership pertinent to this arbitration, or should that be held — I mean, should that be an issue that should be directed back to the courts, as you mentioned earlier?

MR. BRADFORD: *Well, it's a preliminary issue, as I kind of indicated.* If Mr. and Mrs. Hart prove to our satisfaction that when this meeting of limited partners was held, that legally the limited partners were no longer limited partners, because they had defaulted or had been — had lost their status as limited partners, then their acts in removing the general partners would not be effective. *So it's kind of a preliminary issue. But that's really something you need to present evidence on.*

I mean, I think the claimants made a preliminary showing here that they had a meeting pursuant to the limited partnership agreement last August, gave notice, had the meeting, made a decision about removing the general partners, notified the general partners of that decision, to which the general partners objected, and that ultimately triggered this arbitration.

And then the court essentially probably heard the same thing, I guess, and said, "Well, based on what I heard, everybody is here.

I'm going to order that this issue be arbitrated, because that's what the limited partnership agreement says."

So that's where we are.

MRS. HART: Well, what proof do they have that they were limited partners since 1993?

MR. BRADFORD: *They're going to present some evidence on that, and then it's up to you to show that if they took action that appears in these documents that they didn't have the right to take because they weren't limited partners anymore, then that will be an issue we'll have to decide.*

MRS. HART: Do they have proof that they were limited partners, you're saying?

MR. BRADFORD: Well, we haven't heard the evidence yet. What I'm saying is, based on —

MRS. HART: They'll have to prove that first, so —

MR. BRADFORD: — the notice provisions, the other documents they've exhibited here, and their allegations that they have made of — They've made a threshold, a preliminary showing, that they have the right to proceed with this arbitration, and apparently the court heard the same thing, because he ordered that this matter be arbitrated.

MRS. HART: So —

MR. BRADFORD: And the only thing we're arbitrating is what's in the limited partnership agreement, which is whether or not the general partners were properly removed or not.

If we determine that there was no proper basis for removal of the general partners under the partnership agreement, and the grounds are set forth therein, then their action was inappropriate, and the parties are relegated to whatever relief they seek in court, or whatever.

MR. HART: So when they were in default in '93, they would have filed something in court that says, "No, I'm not [in] default, because I have a five-year thing that says I don't have to make any" —

MR. BRADFORD: No, that's not what we're saying. I mean, I think you have to just understand *what I've said is that they've made a threshold showing that we have the right and are obligated to proceed with arbitration on the issue of whether the general partners were properly removed. And we can decide one way or the other, and we won't know until we've heard the evidence.*

*And then you folks are free to present what evidence you have that goes to that issue.* [Emphasis added.]

■ The foregoing discussion makes two things clear. First, appellants were given the opportunity to present evidence and otherwise be heard on the issue of the sufficiency of appellee's ownership interest at the time that he voted to remove them as general partners. Second, the neutral arbitrator, Bradford, clearly understood that this was a preliminary or threshold issue that was included within the scope of the arbitrators' determination of the propriety of appellants' removal as general partners. Accordingly, we conclude that this issue was considered in making the ultimate determination that appellants' removal was proper.

■ Moreover, the fact that the arbitrators' decision does not reflect a specific ruling on this preliminary issue is not helpful to appellants. The Uniform Arbitration Act does not require the arbitrators to make specific written findings on each issue raised during arbitration. Rather, Ark. Code Ann. § 16-108-208(a) (1987) only provides that "[t]he award shall be in writing and signed by the arbitrators joining in the award." Arbitration hearings are not analogous to trial proceedings. In fact, we have held that neither the failure to keep a record of the arbitration proceedings nor the failure to follow the rules of evidence is a ground for vacating an arbitration award. *Dean Witter Reynolds, Inc. v. Deislinger*, 289 Ark. 248, 711 S.W.2d 771 (1986).

■■ Furthermore, although some courts have recognized a need for remand where an arbitrators' award is "patently ambiguous," no such ambiguity exists in the instant case. *See Foster v. City of Fairbanks*, 929 P.2d 658 (1996). Remand may be necessary for a court to determine exactly what it is being asked to enforce, but courts should avoid remanding on the basis of ambiguity " 'because of the interest in prompt and final arbitration.' " *Id.* (quoting *Teamsters Local No. 579 v. B & M Transit, Inc.*, 882 F.2d 274, 278 (7th Cir. 1989). In the interest of avoiding time-consuming and costly litigation, arbitration is not a perfect system. Our scope of review is very narrow, limited to vacating an award only upon statutory grounds

or a finding that the award violates a strong public policy. *Anthony*, 324 Ark. at 58, 918 S.W.2d at 177 (citations omitted).

■ Construing the parties' agreement liberally and resolving any doubts in favor of arbitration, we cannot say that the trial court erred by granting appellee's motion to compel arbitration. Likewise, given our limited scope of review and the absence of any alleged ambiguity in the arbitrators' award, finding that removal was "appropriate under the circumstances," we have no statutory or compelling policy basis to remand the matter for further clarification. In any event, appellants have advanced no authority in support of remanding the case for further clarification or development on the standing issue. Accordingly, we affirm the trial court on this point.

## II. Arbitrators' award

### A. Standard of review

Next, we consider the trial court's June 28, 1999 order confirming the arbitrators' finding that removal was appropriate under the circumstances. Appellants submit that the chancellor erred by failing to vacate or modify the award because the arbitrators failed to follow certain procedural rules. First, we set forth the applicable standard of review. An arbitration award may be vacated pursuant to Ark. Code Ann. section 16-108-212(a) (1987) if:

> (1) The award was procured by corruption, fraud, or other undue means;
>
> (2) There was evident partiality by an arbitrator appointed as a neutral or corruption in any of the arbitrators or misconduct prejudicing the rights of any party;
>
> (3) The arbitrators exceeded their powers;
>
> (4) The arbitrators refused to postpone the hearing upon sufficient cause being shown therefore or refused to hear evidence material to the controversy or otherwise so conducted the hearing, contrary to the provisions of § 16-108-205, as to prejudice substantially the right of a party; or
>
> (5) There was no arbitration agreement and the issue was not adversely determined in proceedings under § 16-108-202 and the

party did not participate in the arbitration hearing without raising the objection.

Significantly, section 16-108-212(b) provides that the fact that the relief awarded could not or would not have been granted by a court is not grounds for vacating, or refusing to confirm, an award.

Arkansas Code Annotated section 16-108-213(a) (1987) permits a trial court to modify or correct an arbitration award where there was an evident miscalculation of figures or an evident mistake in the description of any person, thing, or property referred to in the award. Subsection (a) also permits modification where the arbitrators have awarded upon a matter not before them and the award may be corrected without affecting the merits of the decision upon issues properly submitted. If the award is imperfect in a matter of form not affecting the merits, the trial court may also correct the award. Should the court modify or correct the award, it must do so as to effect the award's intent. Ark. Code Ann. § 16-108-213 (a), (b) (1987).

As an initial matter, we note the difficulty in reviewing appellants' arguments in light of the lack of authority advanced in support of their position. We have long held that we do not consider arguments without convincing argument or citation to authority in support, where it is not apparent without further research that these arguments are well-taken. *See Perryman v. Hackler*, 323 Ark. 500, 508, 916 S.W.2d 105, 109 (1996) (citing *Thomson v. Littlefield*, 319 Ark. 648, 893 S.W.2d 788 (1995)). Nevertheless, we find no merit in appellants' assignments of error.

The party attempting to overturn an award bears the burden of proof. *Anthony*, 324 Ark. at 58, 918 S.W.2d at 177 (citations omitted). Significantly, the court's role is not to determine if the arbitrators decided the dispute correctly but only whether the arbitrators acted within their jurisdiction. *Id.* Indeed, our deference is so great that the failure of the arbitrators to follow the law as a court would have done provides no grounds for relief. *Id.*; *see also* Ark. Code Ann. § 16-108-212(b). Mistakes of law or fact are insufficient to set aside an award. *Arkansas Dep't of Parks & Tourism v. Resort Mgrs., Inc.*, 294 Ark. 255, 743 S.W.2d 389 (1988).

Our review is limited to vacating an award only upon the enumerated statutory grounds, unless the award is violative of a strong public policy. *Anthony*, 324 Ark. 52, 918 S.W.2d 174. We have held that the arbitrator's decision "on all questions of law and

fact is conclusive," unless grounds are established to support vacating or modifying the award. *Dean Witter*, 289 Ark. at 251, 711 S.W.2d at 772 (citing *Wessell*, 287 Ark. 415, 701 S.W.2d 99)). Where there is no case law or compelling public policy on an issue, we refer to provisions of the Uniform Arbitration Act and with the law of other jurisdictions which have adopted the Act. *Anthony*, 324 Ark. at 58, 918 S.W.2d at 177 (citations omitted). We now turn to appellants' specific procedural objections to the arbitrators' award.

## B. Procedural objections

The Harts cited three grounds in favor of vacating or modifying the arbitration award pursuant to Ark. Code Ann. section 16-108-212 and -213. First, appellants contended that the arbitrators violated procedural rules by refusing to grant their motion for a continuance because they had not completed discovery. Second, appellants complained that they did not receive McChristian's trial exhibits in advance of the arbitration hearing. Third, appellants objected to the exclusion of their appointed arbitrator, Cheryl Hart, from a post-arbitration conference.

The chancellor refused to vacate the award on any of these bases because he found that (1) the Harts were fully aware of McChristian's grounds for seeking their removal as general partners; (2) they had the opportunity in chancery court to engage in discovery and exchange evidence; (3) appellants waived any arguments by failing to attend a preliminary arbitration hearing, at which time they could have exchanged exhibits; (4) the Harts did not provide appellee with their exhibits prior to the hearing; (5) appellants failed to proffer any contradictory evidence nor to deny the validity of McChristian's exhibits; and (6) the evidence demonstrated that repeated, albeit unsuccessful, attempts were made to reach Cheryl Hart for the post-arbitration conference.

We recognize that appellants bear the burden of overturning the award. Additionally, we acknowledge that the trial court's sole role was to determine whether the arbitrators acted within their jurisdiction and not to evaluate whether the dispute was correctly decided. In the instant case, none of the statutory grounds for vacating or modifying the award are present. Indeed, the ground claimed by appellants, that the arbitrators refused to hear material evidence, is not supported by the transcript of the arbitration hearing. Additionally, the arbitrators' failure to record a ruling does not amount to a statutory violation under Ark. Code Ann. sections 16-108-212 and -213, nor is it an act in excess of the arbitrators'

jurisdiction. In light of the foregoing, we hold that the chancellor's decision refusing to vacate or modify the arbitrators' award was well-reasoned and supported by the evidence. We affirm the trial court's order confirming the arbitrators' award.

## III. Contempt

The Harts also appeal from the chancery court's September 20, 1999 order holding them in contempt for violating a June 28, 1999 order requiring them to deliver all the limited partnership's assets to the receiver and prohibiting them from interfering with the receiver. Pursuant to that same order, the receiver was directed to "file an application with the FCC to transfer control of Vinewood Communications." The chancery court found the Harts in contempt for filing an objection with the FCC to the transfer of control to the receiver. Appellants were then ordered to pay appellee a $7,118.90 judgment, representing the full cost of arbitration. The chancellor also awarded appellee an undetermined amount for attorney's fees and losses to Vinewood Communications arising from the Harts' contempt.

■ ■ Appellants argue that both the finding of contempt and the consequent punishment were erroneous. In part, the Harts suggest that they were entitled to file an objection with the FCC pursuant to 47 U.S.C. § 309 (1995). However appellants provide no authority to support this argument. Therefore, we must agree with the trial court that appellants were clearly ordered not to interfere with the receiver's transfer of partnership control and, despite that order, purposefully interfered. *See, e.g., Warren v. Robinson*, 288 Ark. 249, 704 S.W.2d 614 (1986) (holding that court's order must be clear for one to be held in contempt for its violation). If an act interferes with the order of the court's business or proceedings, or reflects upon the court's integrity, that act is deemed contemptuous. A court's contempt power may be wielded to preserve the court's power and dignity, to punish disobedience of the court's orders, and to preserve and enforce the parties' rights. *Hodges v. Gray*, 321 Ark. 7, 901 S.W.2d 1 (1995). Accordingly, we affirm the chancellor's order holding appellants in contempt.

■ ■ Similarly, we affirm the amount of the contempt award. The purposes of civil contempt are to preserve and enforce the rights of private parties to suits and to compel obedience to orders made for the benefit of those parties. *Arkansas Dep't. Of Human Servs. v. R.P.*, 333 Ark. 516, 970 S.W.2d 255 (1998). Where

a party is punished for civil contempt, we will not reverse unless the trial court's order is arbitrary or against the weight of the evidence. *Dennison v. Mobley*, 257 Ark. 216, 515 S.W.2d 215 (1974). Here, the chancellor assessed the full cost of the arbitration against appellants as punishment for their disobedience of the court's order.

 Although the parties' agreement required each party to pay one-half of any costs, the trial court was free to assess appellants the other half of such costs as punishment for violating the court's orders. Notably, the contempt award was not a modification of the parties' limited-partnership agreement but a valid exercise of the court's inherent contempt power. Therefore, we affirm the chancellor's order requiring appellants to pay $7,118.90, the full cost of arbitration.

Appellants also object to the portion of the contempt award requiring them to pay appellee's attorney's fees "as subsequently determined under [Ark. R. Civ. P. 54]." Pursuant to that order, appellee was directed to submit an affidavit and claim for attorney's fees. As no fees have yet been awarded, we decline to reach the merits of this issue.

Affirmed.