Samuel EVANS *v.* Benita EVANS

CA 04-884 211 S.W.3d 584

Court of Appeals of Arkansas
Opinion delivered August 31, 2005

[Rehearing denied September 28, 2005.]

*Dodds, Kidd & Ryan,* by: *Judson C. Kidd* and *David W. Kamps,* for appellant.

*Worsham Law Firm,* by: *Richard E. Worsham,* for appellee.

JOSEPHINE LINKER HART, Judge. Appellant, Samuel Evans, argues that, by refusing to lower his alimony payments, the circuit court erroneously modified the terms of a property-settlement agreement between him and appellee, Benita Evans, that provided for reduction of his alimony payments while he worked outside of the United States as a medical missionary. We affirm, concluding that the court's refusal to lower his alimony payments was a proper exercise of its contempt powers.

On December 18, 2000, a decree was entered granting appellee a divorce from appellant. Incorporated into the decree was the parties' property-settlement agreement, which provided in part as follows:

> [Appellant] will pay to [appellee] the sum of $5,000.00 per month, as alimony, on the first day of each month. . . . [Appellee] acknowledges that [appellant] plans to become a medical missionary and agrees that, despite any economic hardship it may cause her, [appellant's] alimony payments should be reduced to $1,000.00 during each month he lives outside the United States while pursu-

ing this lifelong ambition. Upon [appellant's] return to the United States alimony payments of $5,000.00 per month shall immediately resume.

The agreement further provided that appellant would pay appellee $100,000 following the sale of the marital residence.

Following the sale of the residence, the court, in an order filed August 13, 2001, found appellant "in willful contempt of the Decree of Divorce entered herein for failure to pay alimony and for failure to meet other financial obligations" and ordered him to pay, along with other sums, $100,000 plus interest relating to the disposition of the parties' marital home. The court also instructed appellant to "surrender his passport" to the court and ordered that his "passport shall not be returned to him, nor shall [appellant] apply for a duplicate passport," until appellant had made the required payments, including payment of the $100,000 plus interest.

On January 11, 2002, appellee filed a petition asking that appellant be held in contempt. The matter was not heard, however, until May 13, 2004. At the hearing, appellant's counsel argued that, in accordance with the property-settlement agreement, appellant's monthly alimony payment decreased to $1000 beginning in January 2002 when he left the United States and became a medical missionary. During his testimony, appellant admitted that he had obtained a duplicate passport and left the United States on December 30, 2001, for the Philippines, where he practices as a medical missionary. He also admitted that he filed for bankruptcy in Missouri in August 2002, that he had not paid $100,000 to appellant, and that this payment was still within the jurisdiction of the bankruptcy court. Also introduced into evidence was an order from the bankruptcy court that awarded appellee a judgment for any unpaid alimony.

In its June 1, 2004, order, the court found appellant in contempt of court for "applying for a duplicate passport and blatantly leaving the United States against the Court's Order and for not paying alimony payments as ordered." In calculating appellant's alimony arrearages, the court stated that appellant "is not entitled to receive a reduction of the $5,000.00 per month obligation from January 2002 through July 2002, since [appellant's] departure from the United States during this time period was in violation of the Court's Order." The court further ordered that the "monthly alimony obligation of [appellant] shall be

reduced to $1,000.00 per month effective from August 2002, to present, provided that the United States Bankruptcy Court in Missouri discharges [appellant] from his obligation . . . to pay [appellee] $100,000.00." The order further provided that if appellant was "not allowed a discharge of this obligation, then additional alimony arrearages shall be calculated from August 2002 through the date of this hearing at the rate of $5,000.00 per month, with a supplemental order being issued from this Court awarding [appellee] judgment against [appellant] for this additional sum."

On appeal, appellant argues that the court erred by modifying the parties' property-settlement agreement and ordering him to pay $5000 a month in alimony even though the agreement reduced his alimony obligation to $1000 a month while he was working as a medical missionary outside of the United States. We note the well-established Arkansas jurisprudence that when parties enter voluntarily into an independent property-settlement agreement that is incorporated into a decree of divorce, the agreement cannot subsequently be modified by the court. *See, e.g., Gentry v. Gentry*, 327 Ark. 266, 938 S.W.2d 231 (1997). Appellant, however, acknowledged in his brief to this court that he was properly found in contempt of the circuit court's order for leaving the United States and for violating the parties' agreement. And if appellant had abided by the court's order, then he would have remained in the United States and continued to pay alimony at the rate of $5000 a month.

 The Arkansas Supreme Court has stated that if "an act interferes with the order of the court's business or proceedings, or reflects upon the court's integrity, that act is deemed contemptuous" and that a "court's contempt power may be wielded to preserve the court's power and dignity, to punish disobedience of the court's orders, and to preserve and enforce the parties' rights." *Hart v. McChristian*, 344 Ark. 656, 670, 42 S.W.3d 552, 562 (2001). In *Hart*, although the parties' limited-partnership agreement required each party to pay one-half of any costs associated with arbitration, the Arkansas Supreme Court concluded that the trial court properly assessed one party the other half of the costs as punishment for violating the court's orders. The court concluded that "the contempt award was not a modification of the parties' limited-partnership agreement but a valid exercise of the court's inherent contempt power." *Id.* at 671, 42 S.W.3d at 562. In the case at bar, the circuit court's decision to order appellant to pay alimony at the rate of $5000, despite appellant's presence in the

Philippines as a medical missionary, was likewise not a modification of the terms of the agreement. Rather, it was a valid exercise of the court's inherent contempt power for appellant's violation of the court's order restricting his travel outside of the United States until he satisfied his obligation under the agreement to make the $100,000 payment to appellee. Thus, we affirm.[1]

Affirmed.

BIRD and CRABTREE, JJ., agree.

---

[1] While appellant further argues that the doctrine of unclean hands is inapplicable, we do not address this argument because the court, in its order, did not rely on the doctrine. Instead, the court relied on its contempt powers and fashioned a remedy designed to enforce its prior order.