ARKANSAS DEPARTMENT OF PARKS AND
TOURISM, Parks Division, Richard W. Davies, Director
*v.* RESORT MANAGERS, INC.

87-177                              743 S.W.2d 389

Supreme Court of Arkansas
Opinion delivered January 19, 1988

*Steve Clark*, Att'y Gen., by: *Thomas S. Gay*, Deputy Att'y Gen., and *Rick D. Hogan*, Asst. Att'y Gen., for appellant.

*Mathis & Mathis*, for appellee.

DARRELL HICKMAN, Justice. The chancery court of Clark County set aside an arbitration award, finding that it was obtained by "undue means." When the Arkansas Department of Parks and Tourism decided not to renew its lease agreement with Resort Managers, Inc., to operate the lodge at DeGray State Park, the parties agreed to arbitrate some remaining differences. The arbitrators awarded the Department of Parks $65,939.52 as damages or entitlements under the agreement the department had with Resort. Resort filed suit in chancery court to set aside the award. The chancellor found that the department had used undue means to obtain the award by misrepresenting money spent for recarpeting, cleaning, and painting the lodge. The court vacated the award, and the department appeals.

We find no evidence of fraud, corruption, or other undue means; rather, a dissatisfied party who simply did nothing, offered no evidence or argument, made no objections during the arbitration process, and now seeks a retrial of the matter. The arbitration process exists largely to prevent litigation. The judgment is reversed.

The appellee, Resort Managers, Inc., operated the lodge at DeGray State Park under a five year renewable lease, which was to expire December 31, 1985. The department decided not to renew Resort Managers' lease because they were dissatisfied with the management of the lodge. Instead, the department decided in May of 1985 that the state should take over the management. Resort Managers was notified of the decision, and in August 1985 the parties agreed to submit certain disagreements to arbitration. The "agree to disagree" list was prepared by the appellants and presented to the appellee in January 1986. The main dispute centered on the condition of the lodge, that is, whether certain damages to the buildings were normal wear and tear or caused by neglect or abuse by Resort Managers.

In accordance with normal practice, each party selected an arbitrator, and they, in turn, selected a third arbitrator. Resort Managers selected Coy Theobalt, the department selected Billy Franks, and the neutral was John Aulgur. At the arbitration meeting on February 24, 1986, the department presented a worksheet it had prepared, representing money it claimed for replacing, repairing, painting, or cleaning various items at the lodge.

The appellee presented no evidence and did not challenge any evidence or figures submitted by the department for the cost of replacing the carpet, cleaning the kitchen, and repainting the lodge. The arbitrators toured the facility looking at all the areas in dispute, conferred, and finally awarded the state $65,000, which included 60% of the claimed damages to the carpet, 50% of the cost of cleaning the kitchen and 100% of the painting costs and 70% of the labor.

The appellee was surprised by the award and filed suit in chancery court to modify or correct it. The appellee alleged that one or more members of the arbitration panel was confused regarding exactly which carpet was to be replaced and that the department misled the panel because nothing had actually been spent for carpet. In fact, only one estimate had been obtained for

the replacement of the carpet. The appellee further alleged that the department misrepresented that it had spent $16,000 to clean the kitchen and other areas, when in fact it had used state employees to do the work. It was alleged that it cost the department no actual money for the labor. The same allegation was made regarding $12,974 that was spent for painting the lodge.

Richard W. Davies, Director of State Parks, testified that the arbitration worksheet was not made available to the appellee prior to arbitration because Mr. A'Hearn, the appellee's manager, did not ask for it. He said folders were available with supporting documents for the amounts noted. He said the department wanted to be able to document every claim; no attempt was made to hide any information.

After the award, Davies said that A'Hearn remarked that he thought $24 a yard for carpet was high; he also remarked that the paint was cheap and that perhaps a better grade would have saved more. Davies said, however, that A'Hearn had asked for nothing at the arbitration.

A'Hearn disputed nothing before the arbitrators' decision. In fact, he conceded that he did nothing to prepare for the arbitration. He said he received the list of items the parties had agreed to disagree on January 10, 1986. He said he did not prepare because he felt most of the items were obviously normal wear and tear, which he would not be responsible for. He said "I did absolutely nothing until after the arbiters reached a decision because, frankly, I went into shock at the arbitration . . . . I made no effort to find any flaws or faults with the arbitration worksheet prior to the arbitration itself, because I kept wanting to get this over with." He conceded that he did not make the rounds of the premises with the arbitrators. He testified that his company did not clean the premises as they usually did once a year, because their lease was being terminated.

The main basis of Resort Managers' claim of "undue means" is an arbitrators' worksheet prepared by the department

for the arbitration meeting. Attached is a copy of the first page with notes that were evidently made by the arbitrators.

It is undisputed that no one, arbitrators or A'Hearn, asked the department to explain any of these figures. It was obvious that the old carpet was still in place, because the damage was viewed by the arbitrators. It would not be unreasonable to assume the $58,000 figure was an estimate rather than an expenditure. The parties knew that the state would be taking over the lodge. In fact, the state took possession of it in January 1986. It would not be unreasonable to assume that all the parties knew state employees had been cleaning the lodge. Is money paid to state employees not money expended?

We find no evidence of fraud, corruption, or undue means and no other basis to set aside the award, although some mistakes of fact may have been made. (The appellee argues that one area should not have been recarpeted because the carpet was only one year old. The department concedes that it did not realize a more expensive carpet was used for the estimate than that already in place.) If an arbitration award can be set aside easily, then one of the main purposes of arbitration is thwarted, and that is, to avoid litigation.

In *Dean Witter Reynolds Inc.* v. *Deislinger*, 289 Ark. 248, 711 S.W.2d 771 (1986), we said:

In Arkansas arbitration is strongly favored by public policy and is looked upon with approval by courts as a less expensive and expeditious means of settling litigation and relieving congestion of court dockets. *McEntire v. Monarch Feed Mills, Inc.*, 276 Ark. 1, 631 S.W.2d 307 (1982). We have recently addressed the weight to be given an arbitration award in *Wessell v. Crossett Public School Dist. #52*, 287 Ark. 415, 701 S.W.2d 99 (1985). There we stated: 'The decision of the arbitration board on all questions of law and fact is conclusive. [Citations omitted.] The court shall confirm an award unless grounds are established to support vacating or modifying the award.'

Arkansas generally follows other state courts in discouraging setting aside arbitration awards. We have adopted the Uniform Arbitration Act, and it provides that an award can be vacated if it can be proved that it was procured by "corruption, fraud or other undue means." Ark. Stat. Ann. § 34-522 (Supp. 1985). We have not yet interpreted "undue means," but do not hesitate to adopt an interpretation generally used.

> *[U]ndue means . . .* means something akin to fraud and corruption. "Undue means" goes beyond the mere inappropriate or inadequate nature of the evidence and refers to some aspect of the arbitrator's decision or decision-making process which was obtained in some manner which was unfair and beyond the normal process contemplated by the arbitration act.

*Seither & Cherry Co.* v. *Ill. Bank Bldg. Corp.*, 95 Ill. App. 3d 191, 419 N.E.2d 940 (1981). In *Shearson Hayden Stone, Inc.* v. *Liang*, 493 F. Supp. 104 (N.D. Ill. 1980), the court said:

> The courts, however, appear to interpret 'undue means' in conjunction with terms 'corruption' and 'fraud' found in section 10(A) and thus 'undue means' requires some type of bad faith in the procurement of the award.

There are certain ground rules for reviewing arbitration awards.

> The object of arbitration is to avoid the formalities, delay and expenses of litigation in court. Judicial review of an arbitrator's award is more limited than appellate review of a trial court's decision. [Cites omitted.] Whenever possible, a court must construe an award so as to uphold its validity and gross errors of judgment in law or a gross mistake of fact will not serve to vitiate an award unless these mistakes or errors are apparent on the face of the award. [Cites omitted.] Likewise, a mere allowance of too little or excessive damages will not raise a presumption of fraud in and of itself . . . . Even if it could be shown that the arbitrator used the wrong basis to calculate the award, a party would not be entitled to relief under section 12.

*Seither & Cherry Co.* v. *Ill. Bank Bldg. Corp., supra.*

█ Mistakes of fact or law are not a basis to set aside an award. In *Rural Water District No. 6* v. *Ziegler Corp.*, 9 Kan. App. 2d 305, 677 P.2d 573 (1984), the Kansas court quoted from *Coleman* v. *Local No. 570*, 181 Kan. 969, 317 P.2d 831 (1957):

> Thus, the fact that the arbitrator made erroneous rulings during the hearing, or reached erroneous findings of fact from the evidence, is no ground for setting aside the award, because the parties have agreed that he should be the judge of the facts. Even his erroneous view of the law would be binding, for the parties have agreed to accept his view of the law. Were it otherwise in either of these cases, arbitration would fail of its chief purpose; instead of being a substitute for litigation, it would merely be the beginning of litigation. Error of law renders the award void only when it would require the parties to commit a crime or otherwise to violate a positive mandate of the law.

*See also Shearson Hayden Stone, Inc.* v. *Liang, supra,* and 6 C.J.S. *Arbitration* § 92 (1975). A party to an arbitration proceeding cannot wait until the award is made and then complain about something that could have been questioned or discovered during the process. *Pawlicki* v. *Farmers Ins. Co.*, 618 P.2d 1096 (Ariz. App. 1980).

While a mistake may have been made regarding the carpet, it was not akin to fraud or corruption. A question by anyone could have clarified the matter. Resort Managers made no objections and offered to prove nothing. They agree to be bound by arbitration, had their hearing, and should be held to the decision. Every objection now raised by the appellee could have been raised at the arbitration proceeding; all information discovered later could have been discovered then. Instead A'Hearn did not ask one single question, nor make any objection until after the process

was over, and he was shocked by the award. The trial court simply made the mistake of allowing the appellee to retry his case in court, which he had agreed not to do.

Reversed.

*321-3970*
*337-9645*
*321-3576*

*Greg Hunt*
*337-0353*

## ARBITRATOR'S WORK SHEET

Listed below are disputed expense items incurred by Arkansas State Parks/DeGray Lodge as presented to R.M.I. on 1-10-86 for reimbursement.

| ITEM NO. | ITEM DESCRIPTION | $ AMOUNT EXPENDED BY A.S.P. | RESPONSIBILITY RMI/$ AMOUNT | ASP/$ AMOUNT | COMMENTS |
|---|---|---|---|---|---|
| 1 | Drapery cleaning cost | $ 1,844 | | | 927.20 |
| 2 | Carpet replacement cost of all brown carpet | $ 58,815 | 607 | 4874 | |
| 3 | If carpet not replaced, reimburse cleaning of existing carpet | $ 1,600 | | | |
| 4 | Cost of replacing all damaged floor tile in kitchen | $ 230 | 230 | | 230 |
| 5 | Labor cost for cleaning kitchen equipment & kitchen area, including dining room and convention center | $ 16,300 | 6,150 | | 8,150.00 |
| 6 | Replace all folding doors in convention center in hallway | None to date Has not been replaced | 607 → 2270.93 | | |
| 7 | Replace formica cabinet top in convention center waitress station due to large burn | None to date Has not been replaced | 100 | 231.39 | |
| 8 | Repair burned area on wall in convention center waitress station | None to date Remains unrepaired | 0 | | |