SLIP OPINION

Cite as 2017 Ark. 204

# SUPREME COURT OF ARKANSAS

**No.** CV-16-238

| | |
|---|---|
| JOSHUA KILGORE<br><br>APPELLANT<br><br>V.<br><br>ROBERT MULLENAX AND SENIOR<br>DENTAL CARE, LLC<br><br>APPELLEES | **Opinion Delivered:** June 1, 2017<br><br>APPEAL FROM THE PULASKI<br>COUNTY CIRCUIT COURT<br>[NO. 60CV-15-469]<br><br>HONORABLE CHRISTOPHER<br>CHARLES PIAZZA, JUDGE<br><br>AFFIRMED; COURT OF APPEALS<br>OPINION VACATED. |

**RHONDA K. WOOD, Associate Justice**

This case involves the registration of an arbitration award. In deciding this appeal, we must address the following two issues: (1) whether jurisdiction was proper under the Federal Arbitration Act (FAA), and (2) whether the award should have been vacated on public-policy grounds. We conclude the FAA applied and the circuit court did not err in failing to vacate the award on public-policy grounds. We affirm the circuit court's order confirming the award.

## I. *Factual Background*

This appeal arises from a dispute submitted to arbitration. The arbitrator established the following facts by a written opinion. Joshua Kilgore and Robert Mullenax were business partners in an Arkansas dental-management company, Senior Dental Care, LLC (SDC).[1] Kilgore left SDC in 2013. Kilgore signed a settlement agreement, which included both a

---

[1] We use "Mullenax" to refer to both Robert Mullenax and SDC.

noncompete clause and a nondisparagement clause. Kilgore and Mullenax agreed to submit any disputes to arbitration in accord with the rules of the American Arbitration Association (AAA).

Shortly after signing the noncompete, Kilgore bought an ownership interest in a Tennessee company that was a direct competitor with Mullenax. Accordingly, Mullenax filed an arbitration claim to enforce the non-compete. In response, Kilgore filed a claim with the Arkansas Insurance Department. He alleged Mullenax was engaged in a kickback scheme. Mullenax spent $7000 defending this unsubstantiated allegation.

The underlying business dispute proceeded to arbitration. The arbitrator first noted that under AAA rules, which the parties agreed would govern the arbitration, the arbitrator had the power to determine jurisdiction. The arbitrator concluded the FAA applied because the agreement and its prohibited activities involved interstate commerce. Turning to the merits, the arbitrator found that Kilgore had violated the noncompete, but did not award damages on that claim. The arbitrator also found that Kilgore had violated the nondisparagement clause by making his report to the Insurance Department. The arbitrator noted that Kilgore's motive for making the report was to gain an advantage in arbitration. The arbitrator awarded Mullenax $7000 on this claim. Later on, the arbitrator awarded Mullenax an additional $136,000 in attorney's fees, expert-witness fees, and expenses.

Mullenax filed a petition to enforce the award in circuit court. In response, Kilgore filed a cross-petition to vacate the award. First, he argued the arbitrator lacked the authority to hear the case under either federal or Arkansas law. Second, he argued his statements to the Insurance Department were protected by Arkansas public policy. The circuit court

ultimately confirmed the award. Kilgore then appealed to the court of appeals, which affirmed. *See Kilgore v. Mullenax*, 2016 Ark. App. 143, 485 S.W.3d 705. We subsequently accepted the case on petition for review. When we grant a petition for review, we consider the appeal as though it had been originally filed in this court. *Covenant Presbytery v. First Baptist Church*, 2016 Ark. 138, 489 S.W.3d 153.

## II.     *Principles of Law and Analysis*

To begin with, our standard of review for arbitration awards is deferential. We have explained that the court's role is limited to determining if the arbitrator acted within its jurisdiction. *Hart v. McChristian*, 344 Ark. 656, 42 S.W.3d 552 (2001). State and federal courts have concurrent jurisdiction to enforce an arbitration agreement pursuant to the FAA. *Ruth R. Remmel Revocable Trust v. Regions Fin. Corp.*, 369 Ark. 392, 255 S.W.3d 453 (2007). The party attempting to vacate the arbitration award has the burden of proof. *Anthony v. Kaplan*, 324 Ark. 52, 58, 918 S.W.2d 174, 177 (1996). Judicial review of an arbitrator's award is more limited than appellate review of a trial court's decision. *Ark. Dep't of Parks & Tourism v. Resort Managers, Inc.*, 294 Ark. 255, 260, 743 S.W.2d 389, 391–92 (1988). Whenever possible, a court must construe an award so as to uphold its validity, and gross errors of judgment in law or a gross mistake of fact will not serve to vitiate an award unless these mistakes or errors are apparent on the face of the award. *Id*. "The decision of the arbitration board on all questions of law and fact is conclusive. . . . The court shall confirm an award unless grounds are established to support vacating or modifying the award." *Dean Witter Reynolds, Inc. v. Deislinger*, 289 Ark. 248, 251, 711 S.W.2d 771, 772 (1986) (citing *Wessell v. Crossett Public Sch. Dist.*, 287 Ark. 415, 701 S.W.2d 99 (1985)).

SLIP OPINION

A. Does the FAA apply?

The parties' written agreement provided that the rules of the AAA would apply to any future arbitration. AAA Rule 7 provides that "the arbitrator shall have the power to rule on his or her own jurisdiction." AAA Commercial Arbitration Rules (available at http://www.adr.org/commercial). The arbitrator here determined that jurisdiction was proper under the FAA. The FAA covers arbitration disputes concerning transactions in interstate commerce. 9 U.S.C. § 2.

The FAA "applies if the transaction involves interstate commerce, even if the parties did not contemplate an interstate commerce connection, and the language of the FAA makes an arbitration provision enforceable in a contract evidencing a transaction involving commerce to the limits of Congress' Commerce Clause power." *Gruma Corp. v. Morrison*, 2010 Ark. 151, at 8, 362 S.W.3d 898, 903 (internal quotation marks omitted). The United States Supreme Court has noted that "Congress' Commerce Clause power may be exercised in individual cases without showing any specific effect upon interstate commerce if in the aggregate the economic activity in question would represent a general practice subject to federal control." *Citizens Bank v. Alafabco, Inc.*, 539 U.S. 52, 56–57 (2003) (internal quotation marks omitted).

Kilgore argues that the arbitrator and the circuit court were incorrect when they found that the case should be arbitrated under the FAA. Kilgore's central argument is that the settlement agreement between him and Mullenax simply involved a stock transaction in an Arkansas company between two Arkansas individuals. He states the following: "The changes in share ownership in this case did not evidence a transaction in commerce."

The parties agreed that the arbitrator would determine jurisdiction; thus, his decision regarding applicability of the FAA was within his authority. The FAA does not provide Kilgore with an opportunity to relitigate this finding. The arbitrator found that the two businesses at issue were located in different states and traded in goods that crossed state lines. The arbitrator also noted that both businesses received medical supplies and equipment that crossed state lines and found that the businesses were both involved in processing federal Medicaid and Medicare moneys. The arbitrator concluded the following: "Because the agreements and their prohibited activities 'involve interstate commerce' and are the type of activities that usually 'involve interstate commerce,' the FAA applies to this arbitration." The arbitrator's findings and jurisdictional adjudication are conclusive.[2] We therefore have no basis to reverse.

### B. Should the Circuit Court Have Vacated the Arbitration Award on Public Policy Grounds?

Because the FAA is the governing law, a court's ability to set aside the arbitration order award is limited. *See St. John's Mercy Med. Ctr. v. Delfino*, 414 F.3d 882, 884 (8th Cir. 2005) ("Our review of an arbitration award under the Federal Arbitration Act is exceedingly limited and deferential."). The United States Supreme Court has held that when an arbitration agreement falls under the FAA, the FAA provides the "exclusive grounds" upon

---

[2] Also, *Arkansas Diagnostic Ctr., P.A. v. Tahiri*, 370 Ark. 157, 257 S.W.3d 884 (2007), has no bearing on this case, as it involves an initial complaint that the defendant sought to have moved to arbitration. The court there correctly stated that the defendant had the burden to prove that the contract at issue involved interstate commerce. But here, Mullenax is simply trying to register an already arbitrated award. The decision on the FAA's applicability has already been decided, and there is no requirement that Mullenax prove that fact twice.

which to vacate an arbitration award. *Hall St. Assocs., L.L.C. v. Mattel, Inc.*, 552 U.S. 576, 584 (2008). The FAA provides only for a "limited review needed to maintain arbitration's essential virtue of resolving disputes straightaway. . . . Any other reading opens the door to the full-bore legal and evidentiary appeals that can render informal arbitration merely a prelude to a more cumbersome and time-consuming judicial review process." *Id.* at 588 (internal quotation marks omitted).

The FAA provides that a court "must" confirm an arbitration award "unless the award is vacated, modified, or corrected as prescribed in sections 10 and 11 of this title." 9 U.S.C. § 9. The grounds provided in section 10 of the FAA for vacatur are as follows:

(1) where the award was procured by corruption, fraud, or undue means;

(2) where there was evident partiality or corruption in the arbitrators, or either of them;

(3) where the arbitrators were guilty of misconduct in refusing to postpone the hearing, upon sufficient cause shown, or in refusing to hear evidence pertinent and material to the controversy; or of any other misbehavior by which the rights of any party have been prejudiced; or

(4) where the arbitrators exceeded their powers, or so imperfectly executed them that a mutual, final, and definite award upon the subject matter submitted was not made.

9 U.S.C. § 10.[3] Kilgore has not alleged the circuit court should have vacated the arbitrator's award under any of the four listed grounds. Nor has he cited any other provision in the FAA for vacatur. Rather, he contends the court can and should vacate the arbitration award because it violates an Arkansas public-policy providing that "no cause of action shall arise"

---

[3] 9 U.S.C. § 11 addresses the grounds to modify or correct an arbitration award, which the appellant did not seek as a remedy.

from a person's furnishing information regarding fraudulent insurance acts to the insurance commissioner. Ark. Code Ann. § 23-66-506(a) (Repl. 2012). Kilgore also highlights two other immunity statutes located in Arkansas law—Ark. Code Ann. § 23-60-111 and Ark. Code Ann. § 23-61-208(b). These likewise provide that "no cause of action shall arise" against a person who furnishes information to the Insurance Department.

Kilgore ignores that the FAA provides that a court "must" confirm an arbitration award absent one of the four "exclusive grounds" for vacatur. The circuit court did not err in refusing to read into the FAA an additional ground that is not there. The United States Supreme Court has repeatedly refused to allow states to vacate for grounds outside the FAA when the arbitration falls under the FAA's jurisdiction. *See AT&T Mobility LLC v. Concepcion*, 563 U.S. 333 (2011); *Preston v. Ferrer*, 552 U.S. 346 (2008). Kilgore argues that because the legislature has passed statutes protecting whistleblowers from legal accountability, these statutes must also protect whistleblowers from liability in arbitration.[4] However, the Supreme Court has held that a state cannot even explicitly prohibit arbitration of a particular claim or place additional burdens on arbitration when the FAA applies. *See AT&T*, 563 U.S. at 341; *Preston*, 552 U.S. at 350–51; *Kindred Nursing Ctrs. Ltd. P'ship v. Clark*, 581 U.S. ___ (May 15, 2017). In *AT&T*, the Court found that the California rule disfavoring arbitration on policy grounds was preempted by the FAA "because it stands as

---

[4] Because Kilgore's argument fails on other grounds, we do not address whether he would qualify for whistleblower protection. This is an especially thin argument given the arbitrator found that Kilgore's report to the Arkansas Insurance Department was motivated by self-interest and not to protect the public.

an obstacle to the accomplishment and execution of the full purposes and objectives of Congress." *Id.* at 352 (citing *Hines v. Davidowitz*, 312 U.S. 52, 67 (1941)).

We cannot find that the circuit court erred for failing to vacate the arbitration award when Kilgore failed to argue any of the FAA's exclusive grounds for vacatur. *See, e.g.*, *Med. Shoppe Int'l, Inc. v. Turner Invs., Inc.*, 614 F.3d 485, 489 (8th Cir. 2010) ("Appellants' claims, including the claim that the arbitrator disregarded the law, are not included among those specifically enumerated in § 10 and are therefore not cognizable."); *Affymax, Inc. v. Ortho-McNeil-Janssen Pharm., Inc.*, 660 F.3d 281, 284 (7th Cir. 2011) (same); *Carey Rodriguez Greenberg & Paul, LLP v. Arminak*, 583 F. Supp. 2d 1288, 1290 (S.D. Fla. 2008) ("An allegation that the Award violates public policy is not one of the four exclusive statutory grounds upon which the Award may be vacated."). In fact, the circuit court was required to confirm the arbitration award under 9 U.S.C. § 9.

Affirmed; court of appeals opinion vacated.

Special Justice JASON B. HENDREN, joins in this opinion.

HART, J., dissents.

WYNNE, J., not participating.

**JOSEPHINE LINKER HART, Justice, dissenting.** I write separately to criticize the oppression of what is euphemistically referred to as "alternative dispute resolution." Whether it is mediation or, as in the case before us, arbitration, it is eroding the cornerstone of our democracy—judicial process.

Inexplicably, alternative dispute resolution is a favorite of Congress and the Supreme Court of the United States. *See, e.g.*, *AT&T Mobility LLC v. Concepcion*, 563 U.S. 333, 345

(2011) (arbitration is desirable because it "reduc[es] the cost and increas[es] the speed" of dispute resolution). In finest ovine fashion, this court has echoed the Supreme Court's conclusions, asserting, for example, in *Hart v. McChristian*, 344 Ark. 656, 42 S.W.3d 552 (2001), that "this court has oft recognized that as a matter of public policy, arbitration is 'strongly favored.'" Further, this court has stated that "arbitration is looked upon with approval by courts as a less expensive and more expeditious means of settling litigation and relieving docket congestion." *Id.* In my view, alternatives to judicial resolution of disputes should be anathema to every member of the judiciary.

First, the case before us should forever dispel the notion that arbitration is "less expensive." In this $7,000 case, the petitioner engendered $135,000 in legal fees, which were shifted to the respondent. Under Arkansas law, each side would bear its own fees in a tort case. It should also be noted that the arbitrator the petitioner selected billed at $350 per hour. In circuit court, an entire case would be heard for only the filing fee, currently just over $200.

Second, according to the majority, the arbitrator's decision, pursuant to the Federal Arbitration Act and the United States Supreme Court decision in *Hall Street Associates, L.L.C. v. Mattel, Inc.*, 552 U.S. 576 (2008), is all but immune from judicial review. I am mindful that under 9 U.S.C. § 10, a reviewing court can only vacate an arbitrator's judgment:

> (1) where the award was procured by corruption, fraud, or undue means;
>
> (2) where there was evident partiality or corruption in the arbitrators, or either of them;
>
> (3) where the arbitrators were guilty of misconduct in refusing to postpone the hearing, upon sufficient cause shown, or in refusing to hear evidence pertinent and

material to the controversy; or of any other misbehavior by which the rights of any party have been prejudiced; or

(4) where the arbitrators exceeded their powers, or so imperfectly executed them that a mutual, final, and definite award upon the subject matter submitted was not made.

While the grounds for overturning an arbitrator's decision are limited, they are present here. In this case, the arbitrator completely ignored the General Assembly's clearly stated public policy favoring whistle blowers. The majority has not justified why it has decided to immunize the arbitrator's decision to ignore Arkansas law; certainly a circuit court does not enjoy the same latitude.

Finally, the results achieved by alternative dispute resolution, whether inexpensive or not, speedy or not, or flexible or not, are not guided by the same ethos as our courts of law, which is the concept of justice. If alternative dispute resolution was not skewed in favor of the powerful, it would not be a fixture of the ubiquitous adhesion contracts that we are confronted with on a daily basis. We are losing one of the cornerstones of our democracy—courts of law. No one said it better than Harper Lee in her iconic novel, *To Kill a Mockingbird*.

> Thomas Jefferson once said that "All men are created equal" . . . We know all men are not created equal in the sense some people would have us believe—some people are smarter than others, some people have more opportunity because they are born with it, some men make more money than others, some ladies make better cakes than others—some people are born gifted beyond the normal scope of most men.
>
> But there is one way in the country in which all men are created equal—there is one human institution that makes a pauper the equal of a Rockefeller, the stupid man the equal of an Einstein, and the ignorant man the equal of any college president. That institution, gentleman, is a court. It can be the Supreme Court of the United States, or the humblest J.P. court in the land, or this honorable court, which you serve. Our courts have their faults, as does any human institution, but in this country our courts are the great levelers, and in our courts all men are created equal.

Harper Lee, *To Kill a Mockingbird* (Grand Central Publishing, 2010), 273–74. Forgoing justice in favor of expediency—for some—is too high a price to pay.

I dissent.

*Smith, Cohen & Horan, PLC*, by: *Matthew T. Horan* and *Stephen C. Smith*, for appellant.

*Gill Ragon Owen, P.A.*, by: *Dylan H. Potts* and *Danielle M. Whitehouse*, for appellees.