WAYMOND M. BROWN, Judge
Appellants Robert C. Goldtrap (Goldtrap) and Robert C. Goldtrap, D.D.S. P.A., appeal the Sebastian County Circuit Court's order denying their motion to vacate, modify, or correct an arbitration award in favor of appellees Bold Dental Management and Bold Dental Partners (Bold). Appellants also appeal the court's denial of their motion for reconsideration of the same. They argue on appeal that the court erred in refusing to vacate the arbitration award. They also argue that the court erred in reducing the time for Goldtrap to resubmit his breach-of-contract claim. We affirm.
The parties entered into several agreements on May 1, 2014. In the "Asset Purchase and Sale Agreement," appellant Goldtrap agreed to sell his dental practice to appellees for $30,000 and 330,000 shares of membership interest in Bold. In another agreement, Goldtrap was retained as an employee of Bold and entitled to a guaranteed thirty-percent payment of "actual collections attributable to and produced from services provided by Goldtrap." Goldtrap began practicing dentistry through Bold, but he was subsequently terminated on March 3, 2015.
Appellants filed a complaint against Bold on July 15, 2015, alleging three separate counts: (1) breach of contract, (2) wrongful termination, and (3) right to accounting and production of records. Appellees filed an answer on August 10, 2015, denying the essential elements of appellants' complaint. On August 13, 2015, appellees filed a motion to compel arbitration and stay judicial proceedings. According to the motion, the parties entered into a "Joinder Agreement" in which appellants agreed to become a party/member to the "Amended and Restated Operating Agreement" of Bold and to be fully, legally bound by, and subject to, all of the covenants, terms, and conditions of the "Operating Agreement." Article XV of the "Amended and Restated Operating Agreement" provided:
Any dispute or controversy between the Members or Board of Managers arising out of or otherwise relating to the Company or this Agreement shall be settled by arbitration to be held in Springdale, Arkansas in accordance with the rules then in effect of the American Arbitration Association or its successor.
Therefore, Bold asked the court to enter an order compelling arbitration and staying the action until the arbitration process had been concluded. Appellants filed a response on August 24, 2015, denying that they had agreed to arbitrate any dispute relating to the "Purchase Agreement," the "Guaranteed Payment and Service Agreement," and the "Covenant not to Compete and Confidentiality Agreement." Thus, appellants asked that appellees' motion be denied. A hearing on appellees' motion took place on September 16, 2015, and the court entered an order on September 21, 2015, granting appellees' motion as it related to counts one and two of appellants'
*107 complaint. The court stayed action on count three "pending completion of arbitration or further Order of this Court."
The arbitration hearing took place on November 14, 2015.[1] Prior to the commencement of the hearing, appellants withdrew from consideration all claims other than the claim for wrongful termination. In the arbitration award dated January 10, 2017, the arbitrator noted that appellants' withdrawal of the claims was the equivalent of a nonsuit in state court. The award stated in pertinent part:
Goldtrap's employment contract with Bold was part of the sale of his practice to a Bold affiliate, Bold Dental Management, LLC ("Bold Management"). After the sale, Goldtrap continued to practice dentistry in the same office but as an employee under the management and direction of Bold.
While the Agreement also hires Robert C. Goldtrap, D.D.S., P.A., to perform services, it defines those services to be personal to Goldtrap, nonassignable and nondelegable. Goldtrap agreed to (a) perform his duties and carry out his responsibilities in a diligent manner, (b) devote a mutually agreed amount of time to the business and affairs of the practice, (c) use all reasonable efforts to promote the interest of his employer, Bold, and (d) be just and faithful in the performance of his duties and responsibilities. See Respondent's Ex. 3, paragraph 1.
The Agreement states that Goldtrap cannot be terminated at will or for the convenience of his employer, Bold Dental Partners, PLLC ("Bold"). There is no dispute Goldtrap was terminated, so this act must be justified under the termination provisions of paragraph 4 of the Agreement. See Respondent's Ex. 3.[2]
*108 Goldtrap contends he did not breach the terms of his employment agreement so was not justifiably terminated or, alternatively, was not afforded an opportunity to cure his defaults. Central to Goldtrap's problem with Bold was that he failed to adapt to his role as employee, including losing operational control of the practice he sold to Bold Management and the privileges of being his own boss. Goldtrap's termination was justified:
1. Bold hired a dental practice consultant, Carol Feliciano, who worked in Goldtrap's clinic to identify and correct deficiencies and bring Goldtrap's office and dental practice into compliance with Bold standards and policies. Goldtrap resisted Feliciano's suggestions and the insistence of Bold management that he comply with her recommendations. Goldtrap did not want Feliciano in the office and told her to leave and never return. He did not have the authority to exclude her and was obligated to work with her to promote the interests of his employer.
2. Goldtrap refused to follow Bold's policy regarding administration of anesthesia to patients. Goldtrap apparently administered anesthesia to patients, even for routine, nonsurgical dental procedures. Such a service is not unethical or in violation of the law but was contrary to Bold's established policies and practices. On one occasion, Goldtrap refused to allow a Bold anesthesiologist to assist him with a patient who wanted anesthesia. Scott Bolding, D.D.S., Goldtrap's boss, told Goldtrap to cease and desist from performing the procedure without assistance from the anesthesiologist. Goldtrap refrained from the procedure, but his conduct was insubordinate and failed to promote the interests of his employer. He had to conform his practice to the standards established by Bold, even if he disagreed with them or practiced another way under his own shingle.
*109 These two episodes justified Goldtrap's termination. There were numerous other incidents described in the record illustrating Goldtrap's unwillingness to conform his behavior and dental practice to the standards established by Bold. Goldtrap knew what Bold expected of him from numerous discussions and email exchanges with Dr. Bolding and others in the company. Bold conducted regular training and education meetings for its doctors to inculcate them into the Bold philosophy and business method. Goldtrap cannot reasonably contend he did not know or understand what was expected of him.
Goldtrap was given ample notice of the deficiencies of his practice habits and office behavior and more than enough time to conform his behavior to the expectations of his employer. Goldtrap's lack of good faith and disinterest in promoting the best interests of Bold were unequivocally demonstrated by his ultimate refusal to communicate with Dr. Bolding and the delegation of his obligation to communicate about the business to his wife, who was not a dentist or Bold employee. An opportunity to cure a contract breach is meaningless if the breaching party has no desire to fix the problem. Goldtrap wanted what he wanted, whether it pleased his employer or met its reasonable expectations.
Goldtrap is denied relief for breach of contract and his claim is dismissed.
....
This Award is in full settlement of all claims submitted to this Arbitrator. All claims not expressly granted are denied.
Appellees filed a motion to confirm the arbitration award and to dismiss all claims with prejudice on February 3, 2017. Appellants filed a response and a countermotion to vacate, modify, or correct the arbitration award on February 10, 2017. In their countermotion, appellants contended that the award should be vacated under Arkansas Code Annotated § 16-108-223 (a)(1) and (3) as being one procured by undue means and due to the arbitrator's refusal to consider evidence material to the controversy. Appellants also claimed entitlement to modification or correction of the award under Arkansas Code Annotated § 16-108-224(a)(1) due to an evident mathematical miscalculation or an evident mistake. Appellees filed a reply to appellants' response and a response to appellants' counter-motion on February 21, 2017. In their response, they contended that appellants failed to prove the factors necessary to have the award vacated, modified, or corrected. The court held a hearing on the motion and counter-motion on March 31, 2017. It entered an order on May 9, 2017, confirming the award, but denying appellees' request that all remaining claims be dismissed with prejudice. Instead, the court ordered appellants to notify the court and opposing counsel within fourteen days of the date of the order whether they intended to submit the remaining issues to arbitration. If appellants chose to arbitrate the remaining claims, the court ordered them to notify the court of the date, location and name of the arbitrator scheduled to determine the remaining issues within thirty days of notice. The court denied appellants' countermotion.
Appellants filed a notification of intent and motion for reconsideration on May 23, 2017. In the motion for reconsideration, appellants asked that they be allowed to proceed in court on the remaining issues as opposed to arbitration. More specifically, they stated that they "do not desire to arbitrate any remaining claims and there are no documents (to which the plaintiffs have agreed) which require arbitration." Appellees responded on May 25, 2017, asking that appellants' motion be denied and *110 that the matter be dismissed with prejudice. Appellants replied on June 2, 2017. The court entered an order on July 11, 2017, denying appellants' motion and dismissing appellants' breach-of-contract claim with prejudice. The court noted that appellants' request for records and accounting was retained by the court and remained pending. It stated that the accounting matter "will be addressed as pleadings and/or the normal course of business dictate." Appellants filed a timely notice of appeal on July 18, 2017, appealing the May 9 and July 11 orders. Appellants abandoned any pending but unresolved claims in their notice of appeal.
Our standard of review for arbitration awards is deferential. We have explained that the court's role is limited to determining if the arbitrator acted within its jurisdiction.[3] The party attempting to vacate the arbitration award has the burden of proof.[4] Judicial review of an arbitrator's award is more limited than appellate review of a trial court's decision.[5] Whenever possible, a court must construe an award so as to uphold its validity, and gross errors of judgment in law or a gross mistake of fact will not serve to vitiate an award unless these mistakes or errors are apparent on the face of the award.[6] "The decision of the arbitration board on all questions of law and fact is conclusive.... The court shall confirm an award unless grounds are established to support vacating or modifying the award."[7]
As their first point on appeal, appellants contend that the court erred in refusing to vacate the award. According to appellants, the arbitrator's award was procured by undue means and the arbitrator refused to consider evidence material to the controversy. However, this court has no way of knowing what testimony was before the arbitrator because the parties decided against having the hearing transcribed. Thus, there is no justification for this court to vacate the award for the reasons suggested by appellants because mistakes of fact are insufficient to set aside an award, especially when the mistake or error is not apparent on the face of the award.
Appellants also contend in their first point on appeal that the court erred by not correcting or modifying the award due to an evident mathematical miscalculation or an evident mistake. Goldtrap contends that the arbitrator erred by not granting him over $30,000 in unpaid salary. However, Goldtrap's right to any compensation by appellees was abandoned prior to the hearing due to appellants' withdrawal of the breach-of-contract claim in which unpaid salary for Goldtrap was sought. The only claim presented to the arbitrator was for wrongful termination and there was no evidence that Goldtrap sought any right to monetary damages under this complaint. Therefore, this issue is not properly before this court.
As their second point on appeal, appellants contend that the trial court erred "in reducing the time for Goldtrap to resubmit his breach-of-contract claim by *111 requiring Goldtrap to notify the court and opposing counsel within fourteen days of the date of its order of Goldtrap's intent to submit the remaining issues for arbitration and within thirty days to state the name, date and location of the arbitrator." Appellants did not object to this timeline below and have failed to cite any authority on this issue. We will not reverse when a point on appeal is unsupported by convincing argument or sufficient citation to legal authority.[8]
Affirmed.
Harrison and Klappenbach, JJ., agree.

The hearing was not transcribed.

4. TERMlNATION .
4.1. Termination by the Company . The Company shall not have the right to terminate this Agreement at will or for convenience, and instead shall only have the right to terminate it for "Cause," as hereafter defined. For purposes of this Agreement, "Cause" includes the following matters:
4.1.1. The suspension, revocation or cancellation of Goldtrap's and/or the Member's right to practice dentistry in the State of Arkansas (after any appeals or requests for review or reconsideration are exhausted), the revocation of Goldtrap's and/or the Member's privileges by any hospital medical staff organization; the revocation of any certification or eligibility for certification by any Board responsible for overseeing Goldtrap's and/or the Member's practice of dentistry or for any specialty; or the loss or suspension of Goldtrap's and/or the Member's DEA license;
4.1.2. The imposition of any restrictions or limitations by any governmental authority having jurisdiction over Goldtrap and/or the Member or any hospital medical staff organization to such an extent that the Company reasonably determines that Goldtrap and/or the Member cannot engage in the professional practice of dentistry for the Company to the extent contemplated by this Agreement;
4.1.3. Goldtrap breaches any material term or provision of this Agreement and remains in breach for a period of seven (7) days following written notice detailing to Goldtrap the nature of such breach, provided, however, in the event Goldtrap is making reasonable and good faith efforts to cure such breach, this Agreement shall not be terminated provided the breach is in any event, cured within a reasonable period of time (not to exceed thirty (30) days), and provided further, the Company shall not be required to provide more than one notice of the same or substantially the same breach within the same twelve (12) month period prior to exercising its right to terminate this Agreement;
4.1.4. Goldtrap's and/or the Member's resignation, withdrawal, removal, or termination from any professional medical or dental organization or medical or dental staff under threat of, or as a consequence of, disciplinary action;
4.1.5. Goldtrap's and/or the Member's insubordination or failure or refusal to comply with the reasonable policies, standards and regulations of the Company which may be established from time to time by the Company, it being understood that the Company shall have a policy of progressive discipline whereby Goldtrap and/or Member shall have a substantial warning and opportunity to correct behavior or actions which the Company believes, in its sole and absolute discretion, may fall-within this sub-paragraph, provided, however, that the requirement that the substantial warning and opportunity be given may be superseded by a future Employee Code of Conduct put in place by the Company following the date of this Agreement if Goldtrap has approved the Employee Code of Conduct in advance;
4.1.6. Goldtrap and/or the Member is found by the Company to have committed gross misconduct materially inconsistent with the terms hereof or unprofessional or unethical conduct, including, but not limited to, excessive use of alcohol by the Member, alcoholism of the Member, the Member's use of illegal drugs (other than drugs used for proper medical purposes under prescription from an independent physician), or excessive use of or addiction to habit-forming drugs or other drugs that could impair the Member's dental practice or judgment;
4.1.7. Goldtrap's and/or the Member's conviction of any felony offense, or any misdemeanor offense involving fraud, theft or deceit;
4.1.8. The Member's death;
4.1.9. Goldtrap's or the Member's ineligibility to be covered under professional liability insurance that is reasonably acceptable to the Company; or
4.1.10. Goldtrap's or Member's material failure to perform either or their duties, which nonperformance continues after written notice thereof and a seven (7) day chance to cure, including, without limitation, a material reduction in the gross revenues received by the Company and attributable to Goldtrap.

Hart v. McChristian , 344 Ark. 656, 42 S.W.3d 552 (2001).

Anthony v. Kaplan , 324 Ark. 52, 58, 918 S.W.2d 174, 177 (1996).

Ark. Dep't of Parks & Tourism v. Resort Managers, Inc. , 294 Ark. 255, 260, 743 S.W.2d 389, 391-92 (1988).

Id.

Dean Witter Reynolds, Inc. v. Deislinger , 289 Ark. 248, 711 S.W.2d 771 (1986).

Helton v. Joseph D. Calhoun, Ltd. , 2017 Ark. App. 418, 2017 WL 3881882.